IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JUAN GABREIL VILLA CORTEZ,                              No. 6:17-cv-00194-HZ

                    Plaintiff,                          OPINION & ORDER

        v.

COMMISSIONER SOCIAL
SECURITY ADMINISTRATION,

                    Defendant.



John E. Haapala, Jr.
401 East 10th Avenue, Suite 240
Eugene, OR 97401

        Attorney for Plaintiff


Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Sarah Moum
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Juan Gabreil Villa Cortez brings this action for judicial review of the Commissioner's final decision denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). The Commissioner's decision is reversed and remanded for further administrative proceedings.

## PROCEDURAL BACKGROUND

      Plaintiff applied for DIB on December 13, 2012, alleging disability as of December 7, 2012. Tr. 80.[1] His application was denied initially and on reconsideration. Tr. 92–96, 99–102. On June 10, 2015, Plaintiff appeared, with counsel and an interpreter, for a hearing before an Administrative Law Judge (ALJ). Tr. 39. On June 29, 2015, the ALJ found Plaintiff not disabled. Tr. 32. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

      Plaintiff initially alleged disability based on back problems and carpal tunnel. Tr. 230. He was 36 at the time of the administrative hearing. Tr. 30. Plaintiff has a second- or third-grade education and past relevant work experience as a bander, construction worker, tree planter, fork lift driver, and farm worker. Tr. 30, 231.

///

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 9.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *See, e.g., Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. 137 at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at

141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after his alleged onset date of December 7, 2012. Tr. 22. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "lumbar spinal stenosis, status-post surgery, left carpal tunnel syndrome, status-post release, lateral epicondylitis of the right elbow, obesity, dysthymic disorder, anxiety disorder, and depressive disorder." Tr. 22. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 23. At step four, the ALJ concluded that Plaintiff has the following residual functional capacity:

> [T]he claimant has the residual functional capacity to lift and carry up to twenty pounds frequently and up to ten pounds occasionally and to sit, stand, and, and/or [sic] walk for up to six hours in an eight-hour day, with normal breaks. The claimant is limited to no more than frequent climbing of ramps or stairs and must never climb ladders, ropes, or scaffolds. The claimant is limited to no more than frequent stooping. With the left upper extremity, the claimant is limited to no more than frequent handling or fingering. With the right upper extremity, the claimant is limited to no more than frequent reaching in all directions. The claimant can understand and carry out simple instructions.

Tr. 25. Because of these limitations the ALJ concluded that Plaintiff could not perform his past relevant work as a bander, construction worker, tree planter, fork lift driver, or farm worker. Tr. 30. But at step five the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as "cleaner, housekeeping," "cafeteria attendant," and "assembler, small products I." Tr. 31. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 31–32.

**STANDARD OF REVIEW**

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*; *see also Batson*, 359 F.3d at 1193. However, the court cannot not rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

**DISCUSSION**

Plaintiff contends that the ALJ erred by (1) relying on vocational expert testimony based on incomplete hypotheticals; (2) ignoring the opinion of Plaintiff's treating doctor, Martin Hurtado, MD; (3) improperly discounting the opinion of Plaintiff's physical therapist, Judy Cirullo, PT; and (4) improperly discrediting Plaintiff's symptom testimony. Pl.'s Op. Br. 6, ECF

10. Because the ALJ erred in finding that Plaintiff has the ability to communicate in English, the decision of the Commissioner is reversed and remanded for further proceedings.

## I.     RFC Assessment & VE Hypothetical

Plaintiff alleges that the ALJ erred in relying on incomplete hypotheticals presented to the Vocational Expert ("VE"). Pl. Br. 5–10. The Residual Functional Capacity ("RFC") is the most a person can do, despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545, 416.945. In formulating a RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p. An ALJ may rely on the testimony of a VE to determine whether a claimant retains the ability to perform past relevant work or other work in the national or regional economy at step five. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). The ALJ is required to include only those limitations that are supported by substantial evidence in the RFC and hypotheticals posed to a VE. *See id.* at 1163–65. "Conversely, an ALJ is not free to disregard properly supported limitations," including improperly discredited symptom testimony provided by the claimant or lay witness. *Robbins,* 466 F.3d at 886. "[I]f an ALJ's hypothetical is based on a residual functional capacity assessment that does not include some of the claimant's limitations, the vocational expert's testimony 'has no evidentiary value.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014) (citing *Carmickle v. Comm'r Soc. Sec. Admin*., 533 F.3d 1155, 1166 (9th Cir. 2008)). And "[w]hen there is an apparent conflict between the vocational expert's testimony and the [Dictionary of Occupational Titles] . . . the ALJ is required to reconcile the inconsistency." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015) (citing *Massachi v. Astrue*, 486 F.3d 1149, 1153–54 (9th Cir. 2007)).

Here, Plaintiff argues that the ALJ made three errors. First, Plaintiff argues that the ALJ erred in relying on the testimony of the VE because none of the hypotheticals contained the lifting and carrying limitations identified in the RFC. Pl. Br. 6–7. Second, Plaintiff argues that the ALJ erred by failing to resolve the inconsistency between Plaintiff's RFC—which limited Plaintiff to "understanding and carrying out simple instructions"—and the Level 2 Reasoning required by two of the three jobs identified by the VE. Pl. Br. 9. Third, Plaintiff argues "the ALJ failed to consider Plaintiff's language and education limitations when assessing his RFC." Pl. Br. 8. Because the ALJ erred in finding that Plaintiff has the ability to communicate in English, the ALJ's reliance on VE testimony that did not take into account Plaintiff's language limitations constitutes a harmful error.

A.     Lifting and Carrying Limitations

In this case, the ALJ limited Plaintiff to lifting and carrying up to twenty pounds frequently and ten pounds occasionally in the RFC assessment. Tr. 25. None of the hypotheticals presented to the VE contained this exact lifting limitation, which—as the Commissioner points out—is internally inconsistent. In the first and second hypotheticals, the ALJ limited Plaintiff to lifting and carrying up to twenty pounds frequently and twenty pounds occasionally. Tr. 61. The third hypothetical limited Plaintiff to sedentary work or "no more than 10 pounds [of lifting] at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." Tr. 63; 20 C.F.R. § 404.1567. The VE testified that under each hypothetical there were jobs in significant numbers in the national economy that Plaintiff could perform. Tr. 62–64.

The Commissioner argues that the inconsistency between the hypotheticals and the RFC is harmless because the third hypothetical limiting Plaintiff to sedentary work was more

restrictive than the RFC ultimately formulated by the ALJ.[2] Def. Br. 6, ECF 15. The Court

agrees. At the hearing, the VE said that there were two jobs that Plaintiff could perform if limited

to sedentary work: "escort vehicle driver" and "assembler, small products I." Tr. 63. The VE

specifically testified that, though classified as light work in the Dictionary of Occupational Titles

("DOT"), the "assembler, small parts I" job was "within the [sedentary] hypothetical" as the

person could change position at their own discretion and would lift "in the neighborhood of a

few ounces to a few pounds at best." Tr. 64.[3] Lifting only a few ounces to a few pounds is

consistent with the less-restrictive lifting limitation of twenty pounds or less frequently and ten

pounds or less occasionally found in the ALJ's RFC. Because, based on the VE testimony,

Plaintiff could perform the "assembler, small parts I" job with the limitations in the RFC and the

ALJ found in her decision that Plaintiff could perform this job, tr. 31, any error on the part of the

ALJ was harmless, *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006)

(errors are harmless if inconsequential to the ultimate disability determination).

### B.    Simple Instructions and Level II Reasoning

Level 2 Reasoning requires the claimant to "apply commonsense understanding to carry

out detailed but uninvolved written or oral instructions" and "deal with problems involving a few

concrete variables in or from standardized situations." DOT, Appendix C, 1991 WL 688702. In

an unpublished decision, the Ninth Circuit indicated that restricting a claimant to the

---

[2] The Commissioner makes two additional arguments on this point. First, he argues that the ALJ made a scrivener's error in describing the RFC as evidenced by his assigning a higher weight to the frequent limitation and a lower weight to the occasional limitation. Def. Br. 6. Second, he argues that reading the RFC as written is "less restrictive than light work" because it would limit Plaintiff to lifting twenty pounds for two-thirds of the day and ten pounds for one-third of the day. Def. Br. 6. In both instances, the Commissioner argues that the error is harmless. The Court declines to address these arguments because, as discussed above, the VE found that Plaintiff could perform jobs in the national economy with less restrictive lifting and carrying limitations.

[3] The VE also noted that performing the "assembler, small parts I" job at the sedentary level would not substantially alter the number of jobs available in the national economy. Tr. 64. He specifically noted that while "some of those jobs . . . are actually light as performed," those are "pretty incidental [and] wouldn't really reduce the numbers beyond which . . . previously identified." Tr. 64.

performance of simple and routine tasks is consistent with jobs that require Level 2 Reasoning. *Lara v. Astrue*, 305 Fed.Appx. 324, 326 (9th Cir. Nov. 19, 2008) (finding that "someone able to perform simple repetitive tasks is capable of doing work requiring more rigor and sophistication—in other words, Reasoning Level 2 jobs."); *see also Zavalin*, 778 F.3d at 847 (Where the plaintiff was limited to simple, routine, and repetitive work, the court found that the plaintiff's limitations were in conflict with the demands of Level 3 reasoning and that "Level 2 Reasoning . . . seems at least as consistent with[the plaintiff's] limitation as Level 3 Reasoning, if not more so.").

This Court has also previously held that "'simple, routine instructions' are not inconsistent with Level 2 reasoning." *Barnes v. Colvin*, No. 6:15-CV-01906-HZ, 2015 WL 8160669, at *4 (D. Or. Dec. 7, 2015); *see also Patton v. Astrue*, No. 6:11-CV-06423-ST, 2013 WL 705909, at *1 (D. Or. Feb. 25, 2013); *Bobbit v. Colvin*, No. 03:13-CV-01320-HZ, 2014 WL 2993738, at *9 (D. Or. July 1, 2014). As this Court previously explained:

> In the definition, the word "detailed" is modified with the words "but uninvolved[.]" The dictionary meaning of "involved" is "complicated[.]" Webster's New Int'l Dictionary 1191 (3d ed. 2002). Furthermore, the definition of "complicated" is "not simple[.]" *Id.* at 465. Thus, "uninvolved" means "simple[.]" The modifier "but uninvolved" must be considered when interpreting the definition of Level [2] reasoning. *See e.g.*, *Abrew v. Astrue*, 303 Fed. Appx. 567, 569–70 (9th Cir. 2008) (emphasized the phrase "but uninvolved" to affirm the ALJ's finding that the plaintiff could perform jobs with Level 2 reasoning, despite a limitation to simple tasks). Considering the entire phrase, "detailed but uninvolved," [this Court] find[s] that while the instructions may be detailed, they may also be simple. A task that includes "detailed, but uninvolved" instructions may consist of a number of steps, none of which are complex. [Without the express limitation to "one or two" steps or instructions, there is no limitation to Level 1.] Therefore, a [plaintiff] who is limited to "short, simple instructions" is capable of performing a job requiring Level [2] reasoning.

*Patton*¸ 2013 WL 7059090, at *1.

Here, two of the jobs identified by the VE require Level 2 Reasoning and one requires Level 1 Reasoning. *See* Assembler, Small Products I, DOT 706.684-022, 1991 WL 679050; Cleaner, Housekeeping, DOT 323.687-014, 1991 WL 672783; Cafeteria Attendant, DOT 311.677-010, 1991 WL 672694. Based on the case law discussed above, these jobs are consistent with the RFC's simple instruction limitation. Because there is no inconsistency between the VE's testimony and the DOT, the ALJ did not err.

C.     Education and Language Limitations

Pursuant to the Social Security regulations, the Administration will consider an individual's formal and informal education, his or her ability to speak, understand, read, and write in English, as well as his or her ability to do simple arithmetic when determining what work he or she can do. 20 C.F.R. § 404.1564(b)(6); *see also* SSR 96-8p (noting that the step 5 determination looks at "whether an individual is able to do other work, considering his or her age, education, and work experience."). The numerical grade level that an individual completed—when there is no evidence to contradict it—is a strong indicator of one's educational abilities. 20 C.F.R. § 404.1564(b). In addition, the ability of an individual to speak English is considered an educational factor and will be considered in determining what work an individual can perform. *Id.* at § 404.1564(b)(5); *see also Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001) ("The ability to communicate is an important skill to be considered when determining what jobs are available to the claimant."). But "[a] claimant is not *per se* disabled if he or she is illiterate" or lacks the ability to communicate in English. *See Pinto*, 249 F.3d at 847. Rather, it is a factor that should be taken into account at steps four and five and when eliciting the testimony of a VE. *See id.* (The ALJ erred in relying on the testimony of a VE where "neither the ALJ nor

the vocational expert addressed the impact of [the plaintiff's] illiteracy on her ability to find and perform a similar job.").

Here, the ALJ found that "the claimant has a marginal education and is able to communicate in English." Tr. 30. Both his opinion and hypotheticals posed to the VE purport to take into account Plaintiff's education. Tr. 30, 61–63. A "marginal education" is generally considered "formal schooling at a sixth grade level or less" and the ability to do simple, unskilled jobs. 20 C.F.R. § 494.1564. Here, Plaintiff testified that he had completed the second grade. Tr. 54–55. All three jobs identified by the ALJ at step five were "unskilled." *See* Assembler, Small Products I, DOT 706.684-022, 1991 WL 679050; Cleaner, Housekeeping, DOT 323.687-014, 1991 WL 672783; Cafeteria, Attendant, DOT 311.677-010, 1991 WL 672694. Plaintiff's education level is, therefore, consistent with the performance of these jobs, and the ALJ properly considered this factor in making her determination.

However, the ALJ erred in finding that Plaintiff has the ability to communicate in English. In making this finding, the ALJ stated that despite Plaintiff's use of an interpreter at the hearing, Plaintiff is able to communicate in English because he "appeared to understand some questions and answered before interpretations," "testified that he was able to speak in English to order food," and "took a class to learn speaking and writing in English for eight or nine months." Tr. 30. This finding is not supported by the record nor does it reasonably suggest that Plaintiff is able to communicate in English sufficiently to perform the jobs identified by the VE. The record reflects that Plaintiff has consistently required interpretation or translation services in dealing with the Administration as well as with his medical providers. For example, at many of Plaintiff's medical appointments the provider indicated that an interpreter was present. Tr. 301, 303, 307, 313, 315, 317, 320. During one of Plaintiff's mental health appointments, he indicated

he was unable to understand a document sent to him by Social Security and requested help translating it. Tr. 362. His Social Security application indicates that he cannot speak English. Tr. 229. Finally, when asked directly about his ability to speak English at the hearing, Plaintiff testified that he "can understand a little bit" but could not hold a conversation in English. Tr. 54.

In addition, each job identified by the VE requires Plaintiff to have at least Level 1 Language skills according to the DOT. This means that, in terms of reading, Plaintiff would have to "recognize [the] meaning of 2,500 (two- or three-syllable) words[,] read at the rate of 95-120 words per minute[,] and compare similarities and differences between words and between series of numbers." DOT, Appendix C, 1991 WL 688702. Plaintiff would also have to write "simple sentences containing [a] subject, verb, and object, and a series of numbers, names, and addresses" and "speak simple sentences, using normal word order, and present and past tenses." *Id*. Plaintiff's ability to order food in English and unsuccessful attempt at an English language class do not reasonably indicate that he possesses the Level 1 Language skills required for the performance of these jobs. Accordingly, The ALJ's failure to take into account Plaintiff's difficulties communicating in English constitutes an error. *See Pinto*, 249 F.3d at 847 (finding error where "[n]either the ALJ nor the vocational expert addressed the impact of [the plaintiff's] literacy on her ability to find and perform a job").

## II.    Medical Source Opinions

Plaintiff contends that the ALJ erred by ignoring the opinion of Dr. Martin Hurtado, MD. Pl. Br. 10–12.  There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of an examining physician over that of a reviewing physician. *Id*. If

a treating or examining physician's opinion is not contradicted by another physician, the ALJ may reject it only for clear and convincing reasons. *Id.*; *Widmark*, 454 F.3d at 1067. Even if one physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007); *Widmark*, 454 F.3d at 1066. However, the ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

The ALJ errs when he rejects a medical opinion by ignoring it. *Garrison v. Colvin,* 759 F.3d 995, 1012–13 (9th Cir. 2014). "The Secretary, however, need not discuss *all* evidence presented to her. Rather, she must explain why 'significant probative evidence has been rejected.'" *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir.1981)) (emphasis in original). Further, the harmless error analysis applies to the improper rejection of the opinion of a treating source. *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). In Social Security cases, errors are "harmless when they 'are inconsequential to the ultimately nondisability determination'" such that "'no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Id.* (quoting *Stout,* 454 F.2d at 1055–56).

According to Plaintiff, Dr. Hurtado has been "Plaintiff's primary care physician since at least January of 2012." Pl. Br. 10 (citing tr. 352). In the course of treatment, Dr. Hurtado has diagnosed and treated Plaintiff for various conditions including depression, myalgia, myositis, low back pain, chronic pain disorder, metabolic syndrome, sciatica, epicondylitis of the elbow, joint pain, carpal tunnel syndrome, fatigue/malaise, and lumbar radiculopathy. Tr. 329–52. Key to Plaintiff's argument is a form signed by Dr. Hurtado on November 28, 2014, indicating that he

agreed with a functional capacity evaluation performed by physical therapist Judy Cirullo. Tr. 435. The evaluation performed by the physical therapist limited Plaintiff to sedentary work. Tr. 416.

The Ninth Circuit has previously held that a "nurse practitioner could be considered a medically acceptable source where he worked so closely under a physician that he was acting as the physician's agent." *Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015) (citing *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996)); *Taylor v. Comm'r Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) ("To the extent [the] nurse practitioner . . . was working closely with, and under the supervision of, [an acceptable medical source], her opinion is to be considered that of an acceptable medical source). And under prior Social Security regulations, other sources—such as nurse practitioners—were considered acceptable medical sources when part of an "interdisciplinary team." *See Gomez,* 74 F.3d at 971. However, as pointed out by various district court cases and the Ninth Circuit, this section of the regulation was repealed by amendment in 2000. *Vega v. Colvin*, Case No. 14CV1485-LAB (DHB), 2015 WL 7769663, at *13 (S.D. Cal. Nov. 12, 2015) ("[A]s numerous district courts in the Ninth Circuit have recognized, both before and after *Taylor*, the regulation relied on in *Gomez* regarding 'interdisciplinary teams' involving 'other sources' such as nurse practitioners and physician assistants has since been amended, and 'interdisciplinary teams' are no longer considered 'acceptable medical sources.'"); *Molina v. Astrue*, 674 F.3d 1104, 1111 n.3 (9th Cir. 2012) (declining to address *Gomez's* "continued vitality" but noting that the regulatory section relied on in *Gomez* has since been repealed). Accordingly, it is unclear whether the opinion of an unacceptable medical source still becomes that of an acceptable treating source when acting as the agent of an acceptable medical source.

The utility of this case law here is further complicated because the facts of this case are distinguishable from those typically involving "interdisciplinary teams" or "agents." Many such cases involve acceptable medical sources (who are not also treating sources) working closely with unacceptable medical sources. *See Gomez,* 74 F.3d at 971 (noting that "although Dr. Kincade did not personally examine Gomez any time after 1990, NP Baker consulted with Dr. Kincade regarding Gomez's treatment numerous times over the course of the relationship with Gomez" such that her opinion became the opinion of Dr. Kincade); *Hudson v. Astrue*, No. CV-11-0025-CI, 2012 WL 5328786, at *4 (E.D. Wash. Oct. 29, 2012) (declining to attribute the findings of a therapist to a clinical psychologist despite his signature on her report because he had never observed, examined, or treated the plaintiff). Here, Dr. Hurtado does not appear to have worked closely with Ms. Cirullo. However, Dr. Hurtado did treat Plaintiff numerous times. Thus, unlike those physicians who merely consulted with the "other source" without examining the claimant, Dr. Hurtado had an independent basis and treatment record with Plaintiff on which to base his adoption of Ms. Cirullo's evaluation.

But even assuming that it was an error for the ALJ to ignore Dr. Hurtado's opinion, crediting his testimony would not change the ALJ's ultimate disability determination because the evaluation limited Plaintiff to sedentary work. As discussed above, the ALJ presented a hypothetical to the VE at the hearing that limited Plaintiff to sedentary work. Tr. 63. The VE found two jobs in the national economy that Plaintiff would be capable of performing if limited to a sedentary RFC. Tr. 63–64. Accordingly, any error in this regard is harmless.

### III.    Opinion of Judy Cirullo

Plaintiff also argues that the ALJ erred in giving the report of Judy Cirullo, PT, little weight. Pl. Br. 12. Physical therapists are not considered acceptable medical sources. *See Huff v.*

*Astrue*, 275 Fed.Appx. 713, 716 (9th Cir. April 28, 2008) (noting that physical therapists are

"other" sources). Information from medical sources other than "acceptable medical sources" may

provide insight into "the severity of the impairment(s) and how it affects the individual's ability

to function." SSR 06-03p.  The ALJ must consider several factors when evaluating the opinion

of such sources, including: (1) length of relationship and frequency of contact; (2) consistency of

opinion with other evidence; (3) quality of source's explanation for opinion; (4) any specialty or

expertise related to impairment; and (5) any other factors tending to support or refute the

opinion. *See* SSR 06-03p; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Under Ninth Circuit law,

evidence from "other sources" is considered under the same standard as that used to evaluate lay

witness testimony, meaning the ALJ may reject it for reasons germane to the witness.  *Molina*,

674 F.3d at 1111 (because physician's assistant was not an acceptable medical source, ALJ could

discount physician's assistant's opinion for germane reasons).

Ms. Cirullo performed a functional capacity evaluation of Plaintiff on November 18,

2014. Tr. 413. Ms. Cirullo stated that the purpose of the evaluation was to "determine

[plaintiff's] current functional capabilities and limitations." Tr. 415. She noted that plaintiff had

"referred himself for this test as it is required as part of his application for disability." Tr. 415.

As a result of this evaluation, Ms. Cirullo determined Plaintiff can perform the physical demands

of sedentary work as defined by the DOT. Tr. 416.

In the discussion section of her report, she indicated that he was unable to complete

certain tests and sometimes asked to stop a test due to pain. Tr. 415. She found he exhibited

"very poor body mechanics and repeatedly grabbed his back and right leg during the majority of

the tests." Tr. 415. She further indicated in the validity testing section of the report that three

tests were "failed," but she observed no tests where Plaintiff put forth "poor effort," nineteen

where Plaintiff put forth "fair to average effort," and twenty one where Plaintiff put forth "good effort." Tr. 417. During various tests, she also observed facial grimacing, vocalization, shaking, moaning, holding or supporting the affected area, and slow movements. Tr. 418–24. Ultimately, she recommended that he pursue additional functional rehabilitation two to three times per week for six weeks, which could reveal a "more accurate assessment of his functional capabilities." Tr. 416.

The ALJ provided four reasons for discounting the report: (1) the testing was not completed, (2) the limits assessed were based on Plaintiff's subjective reports, (3) the report was prepared for a disability hearing, and (4) the evaluation was performed after a break in Plaintiff's treatment. But none of these reasons are germane to this witness. First, the record does not support the ALJ's finding that the "testing was not completed" as half of the functional tests administered were marked complete. Tr. 415. Second, as Plaintiff notes, nothing suggests that the limits assessed were based on Plaintiff's subjective reports. Rather, the limits assessed were based on the functional testing administered by Ms. Cirullo. Tr. 417. Third, whether the evaluation was sought by Plaintiff in anticipation of his disability hearing has no bearing on the value of Ms. Cirullo's opinion. The reasoning provided by the ALJ must be germane *to the witness*, and there is nothing to suggest that Ms. Cirullo—who provided physical therapy services to Plaintiff—would be biased because her patient was seeking disability benefits. *Cf. Dale v. Colvin,* 823 F.3d 941, 944–45 (9th Cir. 2016) (bias "in the abstract" is not *per se* a germane reason to discredit a witness.). Finally, Plaintiff testified and Ms. Cirullo indicated that the break in treatment was the result of Plaintiff's inability to afford treatment. Tr. 49 ("I didn't go [to physical therapy] because I don't have money and I didn't have the money to go to therapy."), 416 ("This client has not had any functional related rehabilitation . . . due to loss of

insurance several months ago."). The fact that Plaintiff had a lapse in treatment alone is not enough to discredit Ms. Cirullo's opinion as to Plaintiff's functional capacity, particularly given that the reason for the lapse was due to Plaintiff's inability to afford treatment. *See Orn,* 495 F.3d at 638 ("[D]isability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." (internal citations omitted)). The ALJ therefore erred by failing to provide germane reasons for discounting Ms. Cirullo's lay witness testimony.

However, as discussed elsewhere in this opinion, the ALJ's failure to properly discredit this testimony was harmless. Ms. Cirullo determined in her report that Plaintiff was limited to sedentary work. Tr. 416. At the hearing, the ALJ posed a hypothetical to the VE limiting Plaintiff to sedentary work. Tr. 63. The VE found that there were two jobs in the national economy that Plaintiff could perform with these restrictions. Tr. 63–64. And the ALJ cited one of these jobs in her decision. Tr. 31. Crediting this opinion limiting Plaintiff to sedentary work would therefore have no impact on the ultimate disability determination. *Stout*, 454 F.3d at 1054–56 (errors are harmless if inconsequential to the ultimate disability determination).

## IV.    Credibility Determination

The ALJ is responsible for determining credibility.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  In assessing a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929. The first stage is a threshold test in which the claimant must present objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina*, 674 F.3d at 1112; *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of this analysis, absent affirmative evidence of malingering, the ALJ must provide

clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle,* 533 F.3d at 1166; *Lingenfelter*, 504 F.3d at 1036.

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim,* 763 F.3d at 1163; *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Factors the ALJ may consider when making such determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in the testimony. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039. In addition, conflicts between a claimant's testimony and the objective medical evidence in the record can undermine a claimant's credibility. *Morgan v. Comm'r Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999).

When the ALJ's credibility findings are supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). However, a general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Morgan,* 169 F.3d at 599.

Plaintiff has severe impairments of lumbar spine stenosis, left carpal tunnel syndrome, lateral epicondylitis of the right elbow, obesity, dysthymic disorder, anxiety disorder, and depressive disorder. Tr. 22. Plaintiff testified that he is unable to do his past work because he "got sick from his back." Tr. 48. When asked about whether he could do lighter work, Plaintiff said he could not. Tr. 52. He does not "believe any boss would want [him]" because he has diabetes and "his whole body gets rigid and numbs up." Tr. 52.

Despite surgery, Plaintiff testified that he continues to have problems with his back and hand. Tr. 48. In his left hand, he stated he has numbness "all the time." Tr. 48. Plaintiff testified that he has more pain on his right than his left side, tr. 55, and that pain extends from his head to his foot on his right side, tr. 50. He stated in his function report that this impacts his sleep. Tr. 253. He also stated that he can only walk for twenty minutes before needing to rest for ten minutes. Tr. 253. At the hearing, Plaintiff testified that he as a hard time concentrating because of his pain. Tr. 53. For example, his pain made it difficult for him to learn anything in his English class. Tr. 53–54. He said that he has trouble following written and oral instructions and can only pay attention for one or two minutes at a time. Tr. 257. And while he has continued to receive mental health treatment, he still struggles with suicidal ideation. Tr. 51.

On a typical day, Plaintiff wakes up at 7:30 AM and takes his children to school. Tr. 253. He then spends his days watching "preachings" on the computer, helping clean the house, and going to the store for the things that his family needs. Tr. 253. Plaintiff helps care for his wife and daughter. Tr. 253. It takes Plaintiff two hours to do the grocery shopping every week. Tr. 255. While he usually does the housework, he said he takes his time doing it. Tr. 255. He also noted that his wife encourages and helps him with it. Tr. 255. His wife also helps him by reminding him to take medication and cooking. Tr. 254.

Plaintiff's hobbies include going to church, using the computer, and reading his bible. Tr. 256. He said his pain sometimes limits his ability to do these things. Tr. 256. He spends time socializing with other people and goes out two or three times a day. Tr. 255–56. In his disability function report, he stated that he would go to church four times a week, but he testified at the hearing that he goes to Sunday mass for one hour. *Compare* tr. 256 *to* tr. 56. He said that he has

to get up during the church service and is able to sit for half of the service before needing to stand. Tr. 57.

The ALJ provides three reasons for discounting Plaintiff's credibility as to the severity of his symptoms: (1) lack of support from the objective medical evidence; (2) inconsistencies with Plaintiff's reported activities of daily living; and (3) Plaintiff's receipt of unemployment benefits. Tr. 28. Plaintiff contends that these reasons are neither clear nor convincing. Pl. Br. 15. This Court disagrees.

A.      Lack of Support from the Objective Medical Evidence

Under certain circumstances, the ALJ can discount claimant testimony when that testimony is not supported by the objective medical record. *See Batson,* 359 F.3d at 1196 (9th Cir. 2007) (consulting physician "did not believe that [the plaintiff's] 'Graphic and expansive' pain symptoms could be explained on physical basis"); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (The ALJ could consider mild findings on MRIs and X-rays in discounting the plaintiff's testimony as to her back pain.). However, this may not be the ALJ's sole reason for discounting a claimant's testimony: "the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick,* 157 F.3d at 722.

The ALJ found "the claimant's allegations of disabling limitations to be not generally credible as they are not supported by the medical evidence." Tr. 28. The ALJ cited to chart notes that indicated Plaintiff was doing well following carpal tunnel surgery and a lumbar decompression. Tr. 28. She also cited the normal or mild clinical findings with regard to Plaintiff's back, legs, and arms; mild imaging of his back and normal carpal tunnel testing results; and Plaintiff's limited "treatment for [his elbow] since an injection in 2012." Tr. 28.

Finally, she found that therapy notes indicated that his "mental health improved with therapy" and emphasized that his mental health conditions never required emergency or inpatient treatment. Tr. 28.

Here, the record does not support the ALJ's characterization of Plaintiff's mental health condition. In support of her findings, the ALJ cites a chart note from Plaintiff's primary care physician indicating that his diet and inactivity may contribute to his depression, tr. 332, and a treatment note from Plaintiff's therapist indicating that Plaintiff believed he was "doing better than in the beginning," tr. 395. But neither of these chart notes reasonably undermines Plaintiff's testimony as to the severity of his mental health symptoms. In both treatment notes, the physician and the therapist indicated that Plaintiff had symptoms of depression and suicidal ideation. Tr. 332, 395. Moreover, the record as a whole shows that Plaintiff had consistent symptoms of depression, including suicidal ideation, despite continued mental health treatment. Tr. 360, 369, 395, 397 (noting suicidal ideation); Tr. 361 (noting difficulties with memory); Tr. 367, 378 (noting social isolation and difficulties getting along with his family).  Brief periods of improvement—particularly with regard to mental health conditions—do not constitute clear or convincing reasons to undermine a claimant's testimony. *Ghanim*, 763 F.3d  at 1164 (The ALJ may not cherry-pick isolated instances of improved psychological symptoms when the record as a whole reflects longstanding psychological disability.).

But the ALJ's characterization of the record as it pertains to Plaintiff's physical symptoms is reasonable. An MRI from May 30, 2012, showed only a mild disc bulge in his lumbar spine and facet joint arthropathy at L5/S1. Tr. 409. His March 17, 2014, MRI showed postsurgical changes and mild progression of the disc protrusion in his lumbar spine with contact of the L4 nerve root. Tr. 406. After his back surgery, his surgeon noted that he was "doing well"

and that, despite subjective reports of pain, there were "no specific restrictions from [their] standpoint." Tr. 301, 303 ("overall improvement in his preoperative symptoms, although he does have some occasional right leg pain."). His primary care doctor observed that he "rises easily" and that his gait was "somewhat antalgic." Tr. 329. At another appointment, his doctor noted that "he feels subjectively that his right leg is now 'weak,'" but was "not able to demonstrate any objective weakness on exam." Tr. 342. An electrodiagnostic test performed prior to surgery on his left hand indicated that there were no signs of ulnar neuropathy or radiculopathy, tr. 304, and visits after carpal tunnel surgery on his left hand indicated that his symptoms had almost entirely resolved, tr. 313. His carpal tunnel symptoms in his right hand were characterized as "mild." Tr. 316. And Plaintiff sought little treatment for his elbow and indicated that injections improved his symptoms. Tr. 336. Accordingly, the record supports the ALJ's findings that the objective medical evidence does not support his degree of physical symptoms. Because the ALJ properly found other reasons for discounting Plaintiff's credibility, *see infra* Section IV(c), this constitutes a clear and convincing reason.

   B.   Activities of Daily Living

   Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti*, 533 F.3d at 1039. There are two grounds for using daily activities to form the basis of an adverse credibility determination: (1) when activities meet the threshold for transferable work skills and (2) when activities contradict a claimant's other testimony. *Orn,* 495 F.3d at 639. However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Reddick*, 157 F.3d at 722, and "the mere fact that a plaintiff has carried on with certain daily activities, such as grocery shopping . . . does not in any way detract from his credibility," *Webb v. Barnhart,* 433 F.3d 683,

688 (9th Cir. 2005) (citing *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir.2001)). In order to impact a claimant's credibility, the activity has to be "inconsistent with claimant's claimed limitations." *Reddick,* 157 F.3d at 722. The ALJ cannot mischaracterize statements and documents in the record or take these out of context in order to reach his conclusion on the claimant's credibility. *Id.* at 722–23.

The ALJ states that "the claimant's activities are not consistent with his claims." Tr. 28. She specifically cites Plaintiff's statement to his therapist that he was "going to church anywhere from three times per week to every day," Plaintiff's increasing ability to do more household chores, and Plaintiff's testimony that he was attending an English class "three hours a day for eight or nine months." Tr. 28.

Yet none of these activities are inconsistent with Plaintiff's claim of disability. With regard to each activity, Plaintiff noted significant limitations. While Plaintiff did tell his therapist that he was doing more chores because his wife was working full time, tr. 390, he also indicated elsewhere in the record that he received help with housework from his wife and that he takes his time when he does it, tr. 255. While Plaintiff does attend church regularly, his ability to attend hour-long church services—even on a daily basis—does not undermine Plaintiff's allegation that he is unable to work. This is particularly true in light of Plaintiff's testimony that he cannot remain seated throughout the duration of the church service due to pain. Tr. 56. Finally, while Plaintiff did attend English classes for a few hours per day over a period of eight or nine months, he also testified that he was often in pain from the constant sitting, had a hard time concentrating due to this pain, and as a result was ultimately unable to complete the course. Tr. 53–54. These activities, therefore, do not detract from his claims, and this is not a clear or convincing reason for discounting Plaintiff's testimony as to the limiting effects of his conditions.

C.      Receipt of Unemployment Benefits

The Ninth Circuit has held that the "[c]ontinued receipt of unemployment benefits does cast doubt on a claim of disability, as it shows that an applicant holds himself out as capable of working. *Ghanim,* 763 F.3d at 1165 (citing *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988). Here, the ALJ found just that: "in order to receive unemployment benefits, an individual such as the claimant must assert that he is ready, willing, and able to work, which is inconsistent with alleging limitations so severe as to be unable to engage in any substantial gainful activity." Tr. 28. As the record shows, Plaintiff received unemployment benefits for five quarters during 2013 and 2014. Tr. 225. The ALJ, therefore, did not err in finding that Plaintiff's receipt of unemployment detracts from his credibility. Because the ALJ has provided two clear and convincing reasons for discounting Plaintiff's testimony, the Court affirms the ALJ's credibility finding.

**V.      Remand for Further Proceedings**

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1137–38 (9th Cir. 2011). The "ordinary remand rule" is the proper course except in rare circumstances. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

Plaintiff argues that a remand for an award of benefits is appropriate in this case because crediting the improperly discredited evidence as true would require the ALJ to find Plaintiff

disabled on remand. Pl. Br. 19. As discussed above, the ALJ's only harmful error was failing to

take into consideration Plaintiff's limited ability to communicate in English. *See supra* Part I(C).

As the Ninth Circuit has held, illiteracy does not result in a *per se* finding of disability. *Pinto,*

249 F.3d at 847. Accordingly, remand for further administrative proceedings is appropriate in

this case. *Castillo v. Comm'r Soc. Sec. Admin*., Case No. 1:14-CV-01566-SAB, 2016 WL 54387,

at *5 (E.D. Cal. Jan. 5, 2016) (remanding the case for the ALJ can address how the plaintiff's

language limitations will impact her ability to perform the jobs that exist in significant numbers

in the national economy).

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED

for further administrative proceedings.

IT IS SO ORDERED.

Dated this _____ day of March, 2018.


_____
MARCO A. HERNÁNDEZ
United States District Judge